# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
GERAGOS@GERAGOS.COM

MARK J. GERAGOS          SBN 108325
BEN J. MEISELAS          SBN 277412
Attorneys for Plaintiffs ADRIANA LEDESMA, JESSICA LEDESMA, MARISSA
LEDESMA, RONNIE MATHEW LEDESMA, and CHRISTINA HERRERA

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANA LEDESMA, an individual; JESSICA LEDESMA, an individual; MARISSA LEDESMA, an individual by and through her Guardian *Ad Litem* Raquel Sierra; RONNIE MATHEW LEDESMA, an individual by and through his Guardian *Ad Litem* Christina Garcia; CHRISTINA HERRERA; <br><br> Plaintiffs, <br><br> v. <br><br> KERN COUNTY; KERN COUNTY SHERIFF'S DEPARTMENT; WARREN MARTIN; KARENA DE LA GARZA; DWAYNE PERKINS; JAMES MELTON; CHRISTOPHER WONG; and DOES 1-200, INCLUSIVE; <br><br> Defendants. | **Case No.: 1:14-cv-01634-DAD-JLT** <br><br> *The Honorable Judge Dale A. Drozd* <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY SUMMARY ADJUDICATION OF ISSUES** <br><br> [*Filed concurrently with Plaintiffs' Separate Statement of Undisputed Facts, Plaintiffs' Separate Statement of Disputed Facts, and Declarations in Support Thereof*] <br><br> Date: September 6, 2016 <br> Time: 9:30 a.m. <br> Dept.: 5 |

# TABLE OF CONTENTS

I. INTRODUCTION ……………………………………………..…... 1

II. PLAINTIFF'S STATEMENT OF FACTS ……………….…….……..……. 1

    A. Summary of Facts……………………………………………...……1

    B. Use of Force Breach of Standard of Care……………….……..…....6

    C. Mr. Ledesma's Death…………………………………………8

III. LEGAL STANDARD …………………………………………..………. 9

IV. ARGUMENT…………………………………...……………10

    A. There Are Triable Issues of Material Fact as to Plaintiffs' 1983 Claims Based on Violations of the 4th Amendment……………………………………..10

    B. There Are Triable Issues of Material Fact as to Plaintiffs' 1983 Claims Based on Violations of the 14th Amendment…………………………………..15

    C. There are Triable Issues of Material Fact as to Whether Defendant Kern County Has a Policy of Encouraging Excessive Force by its Deputies…....…17

    D. Defendants Have Not Met Their Burden of Establishing That There Is No Triable Issue of Material Fact as to Plaintiffs' Battery Claim………..…….19

    E. Defendants Have Not Met Their Burden of Establishing That There Is No Triable Issue of Material Fact as to Plaintiffs' Negligence Claim…………..21

    F. Defendants Have Not Met Their Burden of Establishing That There Is No Triable Issue of Material Fact as to Plaintiffs' Negligent Hiring, Training, and Retention Claims…………………………………………………..……22

    G. Defendants Have Not Met Their Burden of Establishing That There Is No Triable Issue of Material Fact as to Plaintiffs' State Civil Rights Claims…...23

        a. Defendants Have Not Met Their Burden of Establishing That There Is No Triable Issue of Material Fact as to Plaintiffs' Claimed Violation of the Unruh and Ralph Acts, §§ 51, 51.7 Claims………………………..23

        b. Defendants Have Not Met Their Burden of Establishing That There Is No Triable Issue of Material Fact as to Plaintiffs' Claimed Violation of Bane Act, §52.1……………………………………………….………24

V. CONCLUSION …………………………………………..…….…. 27

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY SUMMARY ADJUDICATION OF ISSUES

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

# TABLE OF AUTHORITIES

**Case Law**

*Alexander v. Cnty. of Los Angeles*,

     64 F.3d 1315 (9th Cir. 1995)………………………………..…..……… 6

*Anderson v. Liberty Lobby, Inc.*,

     477 U.S. 242 (1986)…………………………………..………..….…… 8

*Arpin v. Santa Clara Valley Trans. Agency*,

     261 F.3d 912 (9th Cir. 2001)……………………………….…………….. 9

*Blankenhorn v. City of Orange*,

     485 F.3d 463 (9th Cir. 2007)…………………………………………….5

*Boccato v. City of Hermosa Beach*,

     29 Cal. App. 4th 1797 (1994) …………………………………… 19

*Brown v. Ransweiler*,

     171 Cal. App. 4th 516 (2009) ………………………….…………….. 17

*Castaneda v. Department of Corrections and Rehabilitation*,

     212 Cal. App. 4th 1051 (2013) …………………………………… 15

*C.A. v. Williams S. Hart Union High School Dist.*,

     53 Cal. 4th 861 (2012) …………………………………………… 19

*Collins v. City of Harker Heights, Tex.*,

     503 U.S. 115 (1992) ………………………………………...……… 14

*County of Sacramento v. Lewis*,

     523 U.S. 833 (1998) ……………………………..….……….…… 20

*Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dept.*,

     387 F. Supp. 2d 1084 (N.D. Cal. 2005) ……………………………… 21

*Dixon v. City of Livermore*,

     127 CA4th 32 (2005)……………………………………….…….. 21

*Deorle v. Rutherford*,

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

272 F.3d 1272 (9th Cir. 2001)……………………………..…………….. 25

*Edson 18 v. City of Anaheim,*

    63, Cal. App. 4th 1269 (1998)…………………………………………… 24

*First Nat. Bank of Ariz. v. Cities Services Co.,*

    391 U.S. 253 (1968)………………………………………………..….... 23

*Garlick v. Cty. of Kern,*

    No. 113CV01051LJOJLT, 2016 WL 880785 (E.D. Cal. Mar. 8, 2016)…………20

*Graham v. Connor,*

    490 U.S. 386 (1989)…………………………………..………………... 22

*Grudt v. City of Los Angeles,*

    2 Cal. 3d 575 (1970)……………………………………….…………….. 20

*Hansen v. Black,*

    885 F.2d 642 (9th Cir. 1989)………………………………………….. 19

*Hayes v. County of San Diego,*

    736 F.3d 1223 (9th Cir. 2013)……………………………………….. 17

*Hutchinson v. Grant,*

    796 F.2d 288 (9th Cir. 1986)……………………………………….. 14

*Jackson v. Gates,*

    975 F.2d 648 (9th Cir. 1992)……………………………….…..…… 9

*Johnson v. San Diego Unified School Dist.,*

    217 Cal. App. 3d 692 (1990)…………………………………………… 4

*Jones v. Kmart Corp.,*

    17 Cal. 4th 329 (1998)…………………………………………..…..…… 6

*Lemire v. Cal. Dep't of Corr. & Rehab.,*

    726 F.3d 1062 (9th Cir. 2013)…………………………………….. 17

*Lugtu v. California Highway Patrol,*

    26 Cal.4th 703 (2001)……………………………………………….. 16

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR
ALTERNATIVELY SUMMARY ADJUDICATION OF ISSUES

*Mary M. v. City of Los Angeles*,

    54 Cal.3d 202 (1991)……………………………………….……….…… 5

*Medrano v. Kern Sheriff's Officer,*

    921 F. Supp. 2d 1009 (E.D. Cal. 2013)……………………………….……… 6

*Miller v. Clark County*,

    340 F.3d 959 (9th Cir. 2003)……………………………………….…… 4

*Monell v. Dept. of Soc. Serv. of City of N.Y.*,

    436 U.S. 658 (1978)……………………………………………….…...…… 4

*Morales v. City of Delano*,

    852 F. Supp. 2d 1253 (E.D. Cal. 2012)……………………………….…… 5

*Munoz v. Olin*,

    24 Cal.3d 629 (1979)……………………………………………… 6

*Nally v. Grace Community Church*,

    47 Cal.3d 278 (1988)………………………………………….….. 7

*O'Toole v. Superior Court*,

    140 Cal. App. 4th 488 (4th Dist. 2006)…………………………… 8

*Palmer v. Sanderson*,

    9 F.3d 1433 (9th Cir. 1993)……………………………………..…… 9

*People v. Turner*,

    34 Cal. 4th 406 (2004)……………………………………..…...…… 10

*Phillips v. Desert Hosp. Dist.*,

    49 Cal. 3d 699 (1989)……………………………...……….……5

*Porter v. Osborn*,

    546 F.3d 1131 (9th Cir. 2008) ……………………………….…... 10–11

*Santos v. Gates*,

    287 F.3d 846 (9th Cir. 2002)………………………..……… 16

*Scott v. Harris*,

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

550 U.S. 372 (2007)…………………………………………………... 17

*Scurggs v. Haynes,*

    252 Cal. App. 2d 256, 264 (1st Dist. 1967)……………….…………………. 18

*Sheehan v. Bay Area Rapid Transit,*

    No. 14-CV-03156-LB, 2016 WL 777784 (N.D. Cal. Feb. 29, 2016)……………. 15

*Smith v. City of Hemet,*

    394 F. 3d 689, 701 (9th Cir. 2005)…………………………………….…….. 15

*Stocket v. Association of Calif. Water Agencies Jt. Powers Ins. Auth.,*

    34 Cal. 4th at 446-447……………………………………………………… 11

*Triton Energy Corp. v. Square D Co.,*

    68 F.3d 1216, 1220 (9th Cir. 1995)………………………………..…………. 12

*White v. Super. Ct. (City & County of San Francisco),*

    225 CA3d 1505 (1990)………………………………………………………13

*Wilkinson v. Torres,*

    610 F. 3d 546 (9th Cir. 2010)………………………………………………16

**Statutes**

Civil Code § 51.7………………………………………………………………13

Gov. Code § 815.2(a)…………………………………………………………16

Gov. Code § 900, et seq…………………………………………………..…….17

Pen. Code § 242……………………………………………………….………18

Pen. Code, §§ 835, 835a……………………………………………..………….11

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR
ALTERNATIVELY SUMMARY ADJUDICATION OF ISSUES

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Defendants' motion for summary judgment argues that there are no triable issues of fact as to whether reasonable force was used when arresting Ronnie Ledesma, Jr. However, Plaintiffs allege that Defendants fatally beat Mr. Ledesma for doing nothing but walking away from a deputy. Eye witness testimony and videotape confirms that Mr. Ledesma was viciously attacked by a group of officers with batons, kicks, and dog bites. Accordingly, Defendants' assertion that no rational jury could find for Mr. Ledesma in this matter is plainly false and their motion for summary judgment should be denied.

**II. PLAINTIFF'S STATEMENT OF FACTS**

**A. Summary of Facts**

On August 19, 2013, at approximately 8:34 p.m., Defendant Kern County Sheriff's Department deputies were dispatched to the Walgreens drug store located at 2628 Mt. Vernon Avenue, Bakersfield, California 93306 to investigate "two suspicious people" who were reportedly on the premises. Defendants' Statement of Undisputed Material Facts #5, #6.

Upon arrival, Defendant Deputy Warren Martin ("Deputy Martin") approached decedent Ronnie Ledesma, Jr., because according to Deputy Martin, Mr. Ledesma was a heavy-set Hispanic male. Plaintiffs' Statement of Disputed Material Fact ("DMF") #1. Mr. Ledesma had not committed and was not committing a crime; in fact, Deputy Martin admits that even after he communicated with Mr. Ledesma he did not suspect that he had committed a crime:

> Q. [. . .] You get to Walgreens. You're in the parking lot. You see a heavyset Hispanic male holding a Walgreens bag, and you say to him at first, "what are you doing?" Then he just stares at you. Then you say to him again, "what are you doing?" He says, I'm buying beer or I'm drinking beer. I want to stop right there. So at that point in the interaction with Mr. Ledesma, was it your understanding that he had committed a crime?
>
> A. At that point, no.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

DMF #2.  Mr. Ledesma was walking away from Deputy Martin as he approached—as was well within his rights (especially having committed no crime)—and Deputy Martin stated that one reason he attempted to physically restrain Mr. Ledesma was that "he's delaying my investigation by not stopping," apparently referencing some undefined investigation into "public intoxication."  In a turn of circular logic, Deputy Martin's other stated reason for arresting Mr. Ledesma was that he was already being placed under arrest for public intoxication.  DMF #3; #4.

Deputy Martin ordered Mr. Ledesma to get on his knees and when Mr. Ledesma failed to comply, Deputy Martin admits to then striking Mr. Ledesma twice with a baton, knocking him to the ground.  DMF #5.  The sounds of Mr. Ledesma screaming for help called the attention of a passerby named Emmanuel Vela.  DMF #6.  Mr. Vela's eyewitness account completely contradicts and disputes the facts of the incident put forth by the Defendant Deputies.

Notably, Mr. Vela, who had a clear and well-lit view of the incident, states that at no time was Mr. Ledesma resisting arrest.  DMF #7.  Mr. Vela states he observed that Deputy Martin "continued to strike Mr. Ledesma approximately 15 times with his baton while Mr. Ledesma attempted to shield his face and screamed for help."  DMF #8.  Mr. Vela later told investigators that Deputy Martin was "attacking [Mr. Ledesma] to the point where I initially believed Mr. Ledesma was being robbed."  DMF #9.   During his deposition, Deputy Martin completely denied Mr. Vela's account, stating that he never struck Mr. Ledesma from a mounted position and denied that Mr. Ledesma was even screaming for help:

> Q.  [. . . ] And this individual states that they were walking out of the pharmacy and heard loud screams and heard someone screaming, "help, help."  I want to ask you, did you hear anybody that evening scream, "help, help?"
> A.  No.
> Q.  This witness . . . describes seeing a person who appeared to be on top of another person hitting the person who was lying on the ground.  Did you observe that at all on August 19, 2013?
> A.  Did I see one person on top of another person hitting him?
> Q.  Yes.  Hitting someone lying on the ground.
> A.  No.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

DMF #10.

Not long after Deputy Martin began assaulting Mr. Ledesma, Defendant Deputies Karen De La Garza, Dwayne Perkins, Christopher Wong, and James Melton arrived. DMF #11. These deputies immediately began attacking Mr. Ledesma, hitting him with their batons and kicking him all over his body, including in his head. DMF #12. Again, Mr. Vela states that at no point in time was Mr. Ledesma resisting arrest.

While Mr. Ledesma was being attacked and lying defenseless, Deputy Perkins instructed his K-9 German Shepherd named Volker to attack Mr. Ledesma using the Germanic command for "capture" (*Pucken*), and the K-9 immediately began biting his legs. DMF #13. In contrast with the eye-witness reports by Mr. Vela, Deputy Perkins believed that Mr. Ledesma was resisting but that he was not "assaultive."

> Q. Okay. In terms of resisting, at that point in time, you still did not see Mr. Ledesma punch or kick either of the officers, correct?
> A. I don't remember him kicking at that point, no.
> Q. Okay. Or punching?
> A. Or punching, no.
> Q. Okay. And was it at that point in time that you released the K-9?
> A. I walked him up to him, and then I gave him a command.

DMF #14. Despite the fact that Deputy Perkins believed that Mr. Ledesma was merely resisting and not being assaultive, Deputy Perkins admitted that it took him only thirty seconds before deploying his K-9 to attack a man who according to police was simply sitting on his buttocks and according to eye-witness Mr. Vela was prone and shielding his face and screaming for help. Deputy Perkins testified:

> Q. Okay. And it would be fair to say that what you did was you arrived and the moment you arrived and you saw each of the deputies on a different arm, the very first thing you did right away within those 30 seconds is you announced that you were going to deploy the K-9?
> A. Correct.
> Q. And so within those 30 seconds, the moment you arrived and you saw that scene, you had already made the decision that if he did not submit, you were going to deploy the K-9?
> A. Yes.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

DMF #15.

Fearing for Mr. Ledesma's safety, Mr. Vela approached the officers and held up his cell phone, pretending to film the attack in order to get the deputies to stop using what he believed to be excessive force on Mr. Ledesma. DMF #16. As a result, many of the deputies dropped their batons, though many continued beating Mr. Ledesma with their fists and the K-9 continued to bite Mr. Ledesma's legs. DMF #17. When it became clear that his presence was not dissuading the deputies from attacking Mr. Ledesma, Mr. Vela began actually filming the attack and captured the end of the assault. DMF # 18; *see also* Declaration of Emmanuel Vela, ¶ 24 , Exh. B.[1] Mr. Vela subsequently stated that "[d]uring the entirety of the [deputies'] attack, Mr. Ledesma yelled and screamed for help, and never resisted arrest," and stated that the attack "reminded me of gang members jumping and beating a rival." DMF #19.

Despite Mr. Ledesma's agonized screams—as captured on video and described by witnesses—Deputies Perkins, Martin, and De La Garza all later testified that the beating and K-9 attack continued because Mr. Ledesma "was impervious or immune to pain" and he "would not have any physical reaction, would not verbally recognize any pain." *Compare* DMF #20 ("During the entirety of the [deputies'] attack, Mr. Ledesma yelled and screamed for help") *to* Defendants' Statement of Undisputed Material Facts #83, #113, #114, #115. Worse still, Deputy Martin continued to deny that Mr. Ledesma was feeling pain even after viewing the video recording of Mr. Ledesma repeatedly screaming in agony:

> Q. And as you sit here today, after watching the video of the incident, do you—have you reached the same conclusion today that it appeared that Mr. Ledesma was immune to pain? Has your opinion changed in any way?
> A. No.

DMF #21. Similarly, Deputy Perkins wholly denied the version of events depicted on Mr. Vela's video and contained in his witness statement:

---

[1] Plaintiffs have attached Mr. Vela's video as Exhibit "B" to his declaration – which has been contemporaneously lodged with the Court – for purposes of comparing Defendant's account with what actually appears on a video.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

Q. Okay. If you turn to Page 28 of 80, this individual states that, "as Ledesma was lying on the ground, he continued to cry for help and cry as the deputy on top of him struck him." Do you recall ever seeing that or witnessing that while you were there?

A. I don't recall him crying or yelling for help.

Q. And the second-to-last paragraph, it says, "Vela claimed the deputies were, quote, 'really into it,' and described the deputies' behavior as gang members jumping and beating a rival." Do you agree with the witness here?

A. No.

Q. On Page 39 of 80, the second paragraph down, the individual says, "During the entire struggle, Vela said Ledesma yelled for help and screamed, but did not appear to actively resist." Do you agree with the witness here?

A. No.

DMF #22.

Mr. Vela's video also depicts Deputy De La Garza threatening to charge him with a violation of Penal Code § 148 for filming the attack (the same purported crime that the Deputies ultimately sought to charge Mr. Ledesma with). DMF #23. Further, deputies immediately demanded that Mr. Vela turn over the cell phone he used to record the attack. DMF #24.

No ambulance was called for Mr. Ledesma, despite his serious injuries. Instead, Mr. Ledesma was handcuffed and brought to Kern Medical Center in a squad car. DMF #25.

Mr. Ledesma's condition rapidly deteriorated in the hospital from the trauma he sustained from the sheriff's deputies. DMF #26. Mr. Ledesma's family was not called or notified of Ledesma's condition until August 26, 2016 when his mom was called and told he had a stroke. DMF #27. Mr. Ledesma's family arrived at hospital but were sent away by Kern County Police to get additional "authorizations." DMF #28. The family spent hours getting the authorizations from the Sheriff's Jail in downtown Bakersfield and returned to find Mr. Ledesma was on life-support and about to die. DMF #29. They observed deep wounds on his legs and bruising on his head and face. DMF #30. Mr. Ledesma died the following the day on August 27, 2016. DMF #31. The cause of his death was a pulmonary embolism thrombosis which was either caused by, or aggravated by, the dog bite and trauma

from the incident according to coroner and forensic pathologist who actually conducted the official autopsy. DMF #32.

**B.    Use of Force Breach of Standard Care**

Plaintiff's use of force expert Scott DeFoe, a former well-decorated police officer, was given the task to opine on Defendant's police practice, assuming arguendo Defendant's version of events as true. Mr. DeFoe did not take into account, for example, Mr. Vela's eyewitness account since it would logically follow that if the police failed to follow protocol and used excessive force based on their own account, the Defendant's conduct would rise to substantially greater levels of culpability and malfeasance where the eye-witness observed a brutal beating of a defenseless man. Mr. DeFoe opined that the force used to arrest Mr. Ledesma was unreasonable and against protocol for a number of reasons. Declaration of Scott DeFoe, ¶ 2, Exh. A ("DeFoe Report"), pp. 5–8. Among his many opinions contained in his expert report, Mr. DeFoe opined that given the fact that Mr. Ledesma was initially doing nothing more than walking away from Deputy Martin, Deputy Martin acted unreasonably when he decided to forcibly restrain Mr. Ledesma instead of taking the time to call for backup or formulate a plan. *Id.* at pp. 5–6. If Deputy Martin had done so, he could have approached Mr. Ledesma better prepared and ready to end any potential conflict quickly. *Id.*

Additionally, Mr. DeFoe opined that Deputy Martin acted unreasonably by failing to utilize any number of nonlethal devices, including oleoresin capsicum ("OC") spray or a Taser. *Id.* at p. 6. These methods are generally safer and more effective at subduing arrestees than batons and dog bites. *Id.*

Further, Mr. DeFoe opined that Deputy Martin acted unreasonably when he continued to strike Mr. Ledesma instead of giving him additional commands and/or waiting for backup. *Id.* at pp. 6–7.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

Most significantly, Mr. Defoe opined that Deputy Perkins acted unreasonably when he directed his K-9 to bite Mr. Ledesma despite the fact that he was sitting on his buttocks with his hands behind his back, was not fleeing, and was not assaultive. *Id.* at pp. 7–8.

Also, Mr. DeFoe opined that Deputy De La Garza, Wong, and Melton used unreasonable and excessive force when they continued to beat Mr. Ledesma when the goal was simply to handcuff Mr. Ledesma and he was not being assaultive. *Id.* at p. 8.

Sergeant Fred Wheeler and Senior Deputy Ryan Dunbier, the individuals designated by Defendant as the persons most knowledgeable on Defendant County's general "use of force policy" and "K-9 policy," respectively, are both largely in agreement with Plaintiff's expert Scott DeFoe.

Sergeant Wheeler stated at his deposition that hits to the shoulder and head are not target areas for batons. DMF #33. The gang style beating described by Mr. Vela involves indiscriminate hits to the body head. Defendant Deputy Wong admits to repeatedly striking Mr. Ledesma in the shoulder, and stated that he believed such blows were within protocol:

> Q. And did you strike him with the baton?
> A. Yes, I did.
> Q. And how many times?
> A. If I remember correctly, it was possibly three times.
> **Q. And to what area of the body?**
> **A. It was the right shoulder area.**
> Q. And was that all three blows to the right shoulder area?
> A. Yes.
> **Q. And is that consistent with your training as far as using the baton?**
> **A. Yes.**
> Q. Is the shoulder an area that you're taught to strike—to target in a strike?
> A. Yes. It's like a—more the shoulder and biceps area, I guess.

DMF #34.

Deputy Dunbier stated that it would be against protocol to use a dog as an offensive weapon where a suspect is merely resisting, but not actively assaulting officers:

> A. [] **I'm not going to deploy the dog on somebody who is resisting.** Granted, they are resisting arrest at that point, but they are not actively fighting. That would not be a situation where I would deploy the dog.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

Q. That would be against protocol, as you understand it?

A. Yes.

DMF #35. For his part, Deputy Perkins, the K-9 handler who deployed Volker to viciously bite Mr. Ledesma leg, contradicts Defendants' own K-9 PMK and clearly misapplied policy:

> A. Well, and to simplify it, once you read our policy, if you have an offense take place and somebody's actively resisting when an offense is taking place or you believe it's going to take place and **you have somebody actively resisting, to that extent, then it's going to usually justify a dog bite**.
>
> [. . .]
>
> Q. And so it looks like it's bullet point number 2 just to hone in on the specific portion here, it says, "The suspect is physically resisting arrest, and the use of the police service dog appears necessary to overcome such resistance." Is that also the specific bullet point you were referring to earlier in today's deposition when you said that if you look at the manual, it says *that just resisting alone would be sufficient for a dog to be used [for] apprehension purposes?*
>
> A. Yes. Or actively resisting.

DMF #36.

Based on eyewitness Emmanuel Vela's observations of the incident, the K-9 bit a defenseless Mr. Ledesma, who was not resisting arrest, and begging for help as he was also continually beat by other Deputies. Clearly protocol was breached under this set of disputed facts. Going one step further, and even assuming one were to accept as true the facts set forth by Deputy Perkins, that Mr. Ledesma was resisting but not assaulting officers, the deployment of the K-9 was still out-of-protocol according to Deputy Dunbier's testimony above.

## C. Mr. Ledesma's Death

Eugene Carpenter, Jr., M.D., is the contract-coroner for Kern County, and pathologist who performed Mr. Ledesma's autopsy. During his deposition, Dr. Carpenter himself acknowledged that Mr. Ledesma was an "egg shell" plaintiff, and that the dog bite and beating he sustained were the "last straws" that broke the camel's back:

- 8 -

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

Q. And one of the potential causes that I believe were listed is that, here you had someone who was prone to it, and one of the causes could have been the baton strikes and the dog bite that triggered, basically, the explosion; you know, it's the last straw that breaks the camel's back; is that fair to say?

A. Yes. The last straw is what I refer to these cases as being. And I usually will say "last straw" and put it in quotes.

[. . .]

Q. Eggshell, last straw, would you agree that this case fits that bill?

A. Yes. He was a very frail individual, medically very frail individual.

DMF #37.

Dr. Carpenter testified that the cause of death for Mr. Ledesma was a "**pulmonary thromboembolism due to <u>deep vein thrombosis of the legs</u>"** which was caused by trauma. DMF #38.

Specifically, Dr. Carpenter stated that Mr. Ledesma's physical condition made him susceptible to the pulmonary embolism he ultimately died of (i.e., an egg shell Plaintiff).

Dr. Carpenter stated to a reasonable degree of medical certainty that the dog bite and baton strikes either directly caused the embolism or contributed to the embolism, through the creation of thrombi or through the dislodgment of preexisting thrombi:

Q. To a reasonable degree of medical certainty, do you believe that the dog bite, either/or—I'm not asking you which one—**<u>either aggravated or caused deep vein thrombosis of the legs?</u>**

[. . .]

A. Um, yes, with the one qualification are contributed to their—if they were preexisting, contributed to them loosening up.

DMF #39.

Further, Dr. Carpenter ruled that out that drugs were the cause of the embolism. DMF #40.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56 states that a court may grant a motion for summary judgment if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. There is no requirement that the judge make a finding of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Only

- 9 -

disputes over facts that might affect the outcome of the case will properly preclude summary judgment. *Id.* at 248. A party opposing a motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 248–49.

To survive a motion for summary judgment the nonmoving party must establish that there is a genuine issue of material fact as to whether Defendants violated federal and state law. Fed. R. Civ. P. 56(e); *see also First Nat. Bank of Ariz. v. Cities Services Co.*, 391 U.S. 253, 288–89 (1968). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" *Cities Service*, 391 U.S., at 289. (emphasis added). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Cities Service, supra,* 391 U.S., at 289.

## IV.   ARGUMENT

### A.   There Are Triable Issues of Material Fact as to Plaintiffs' 1983 Claims Based on Violations of the 4th Amendment

Defendants' motion as to Plaintiffs' Fourth Amendment claims should be denied because there is a triable issue of material fact as to whether the force used by Defendants was reasonable.

"A claim against law enforcement officers for excessive force is analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 921 (9th Cir. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). "The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances" as perceived by a reasonable officer at the scene. *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (citing *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985)); *Graham*, 490 U.S. at 396–97. Inquiries into the reasonableness of force require courts to "slosh [their] way through [a] factbound morass." *Scott v. Harris*, 550 U.S. 372, 383 (2007). Accordingly, the Ninth Circuit has stated that courts should rarely grant summary judgment in excessive force cases. *See Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) ("Because such balancing nearly

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly."); *Alexander v. Cnty. of Los Angeles*, 64 F.3d 1315, 1322 (9th Cir. 1995) (stating that in most excessive force cases, the question of reasonableness "is normally a jury question").

In determining whether an officer has used excessive force courts must consider three factors: "[(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The first factor weighs heavily in Plaintiffs' favor here because when Deputy Martin began assaulting Mr. Ledesma, he had not committed any crime at all. Even if Defendants' recitation of the facts were true, Deputy Martin never suspected Mr. Ledesma of any crime beyond public drunkenness, an offense that can hardly be described as serious or necessitating the level of force used. *See Sheehan v. Bay Area Rapid Transit*, No. 14-CV-03156-LB, 2016 WL 777784, at *6 (N.D. Cal. Feb. 29, 2016) (noting that public drunkenness is "not necessarily the most profound crime").

The second factor also weighs heavily in Plaintiffs' favor because Mr. Ledesma never posed a danger to those around him. Deputy Martin attacked Mr. Ledesma as he was standing in the parking lot outside of Walgreens on the assumption that he was a dangerous criminal based solely on his race. Deputy Martin attacked Mr. Ledesma without warning or cause and at no point did Mr. Ledesma resist Deputy Martin's attempts to arrest him. In addition, it is undisputed that Deputy Perkins *never* saw Mr. Ledesma attempt to flee or be assaultive with another officer. Nevertheless, Deputy Perkins ordered his K-9 to bite Mr. Ledesma despite the fact that he was sitting on his buttocks with his hands behind his back from the moment he arrived.

Similarly, the third factor also weighs heavily in Mr. Ledesma's favor. Again, it is undisputed that Mr. Ledesma was doing nothing but sitting on the pavement from the

- 11 -

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

moment Deputy Perkins arrived on the scene. Mr. Ledesma was not attempting to flee, nor was he resisting arrest. Plaintiffs and Defendants do dispute how Deputy Martin approached Mr. Ledesma, and whether Mr. Ledesma resisted arrest at that time. However, as the nonmoving party Plaintiffs' facts are entitled to the presumption of truth. *See Hutchinson v. Grant*, 796 F.2d 288, 290 (9th Cir. 1986). Viewed in the light most favorable to Plaintiffs, this evidence is more than sufficient to create a triable issue of material fact as to whether Defendants used excessive force. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1220 (9th Cir. 1995) ("Viewing the evidence in the light most favorable to the nonmoving party, this court must determine whether there are any genuine issues of material fact.").

There is not only a triable issue of material fact based on Plaintiffs' and Defendants' radically different stories regarding the events of August 19, 2016. Even assuming Defendants' version of the events, there is a triable issue as to whether Defendants used a reasonable amount of force. Defendants' assert in their motion for summary judgment that Deputy Martin first hit Mr. Ledesma with his baton when Mr. Ledesma raised his fist at him, as if to hit him. According to Defendants, Deputy Martin ordered Mr. Ledesma to go to his knees, and when Mr. Ledesma did not comply Deputy Martin struck him with his baton twice. Mr. Ledesma then fell to the ground and rolled onto his back into a "trained fighting position" while Deputy Martin struck him five to seven more times with his baton. Defendants do not claim that Mr. Ledesma ever hit Deputy Martin.

Plaintiffs have submitted a declaration with an expert report by a former Riverside County Sheriff's Deputy, Scott DeFoe. In that expert report, Mr. DeFoe asserts that Deputy Martin acted unreasonably when he struck Mr. Ledesma, and then continued to strike him, despite the availability of numerous alternatives. Mr. Ledesma, according to Defendants, fell to the ground after two strikes from Deputy Martin's baton. Mr. Ledesma was not attempting to flee and never struck Deputy Martin, whatever movements he may have been making. Nevertheless, Deputy Martin decided to strike him over and over while he lay on the ground in a defensive posture. By deciding not to wait for backup or formulate a plan

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

before attempting to apprehend Mr. Ledesma Mr. DeFoe opined that Deputy Martin used unreasonable and excessive force. By the same token, Mr. DeFoe opined that Deputy Martin failed to act reasonably by neglecting to use any number of nonlethal takedown devices, including OC spray and a Taser.

Mr. DeFoe is equally, if not more, critical of the remaining deputies. According to Defendants, Mr. Ledesma was sitting on the floor when Deputies De La Garza and Perkins arrived. Defendants never assert that Mr. Ledesma attempted to flee or struck one of the deputies. Nevertheless, Deputy Perkins ordered his K-9 to attack Mr. Ledesma as he lay on the ground in a defensive posture. By ordering his K-9 to attack Mr. Ledesma while he was, again according to Defendants, resisting but not being assaultive Deputy Perkins acted unreasonably and against best practices. Meiselas Decl., Exhibit 2.[2] Deputies De La Garza, Wong, and Officer Melton also struck Mr. Ledesma numerous times while he lay on the ground despite the fact that he was not assaultive. By doing so, Mr. DeFoe opined that Deputies De La Garza, Wong, and Officer Melton acted unreasonably and, in fact, detracted from their ultimate objective of getting Mr. Ledesma into handcuffs. Accordingly, there is a triable issue of material fact as to whether Defendants used excessive force even according to their own telling of the events.

Finally, Defendants assert in passing that there is no evidence to support the allegations that the deputies' actions caused Mr. Ledesma's death. This is simply false. The Sheriff's Department Autopsy Report itself lists "blunt force trauma of the legs (baton strikes)" and "dog bites to the legs" as factors contributing to Mr. Ledesma's death. Meiselas Decl., Exhibit 12. Furthermore, it is undisputed that Mr. Ledesma died of a stroke caused by deep vein thrombi that formed in his legs. *Id.* And the pathologist who performed Mr. Ledesma's autopsy and prepared his coroner's report, Dr. Carpenter, himself conceded

---

[2] "Deputy Dunbier: I am not going to deploy the dog on somebody who is resisting. Granted, they are resisting arrest at that point, but they are not actively fighting. That would not be a situation where I would deploy the dog. Ben Meiselas: Would that be against protocol, as you understand it? Deputy Dunbier: Yes." Depo. of Ryan Dunbier, Pg. 34:4–12.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1   that thrombi are often caused by blunt force trauma.  *Id.*[3]  Accordingly, Defendants'

2   assertion that there is not a triable issue of material fact as to whether Defendants' use of

3   force caused Mr. Ledesma's death is simply false.

4          Defendants also claim that there is no triable issue of fact as to whether their actions

5   are protected by qualified immunity.   As described in more detail above, Defendants

6   attacked Mr. Ledesma with batons, kicks, and dog bites for no reason other than that he

7   decided to ignore Deputy Martin.  Such force is far more egregious than the force used in

8   many of the Ninth Circuit excessive-force arrest cases decided before this incident occurred.

9   Accordingly, Defendants were on notice that their conduct violated clearly established law.

10  *See, e.g.*, *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) (denying qualified

11  immunity and holding that "abusive application of handcuffs," causing pain and bruising was

12  unconstitutional and recognizing that "the use of excessive force by officers in effecting an

13  arrest was clearly proscribed by the Fourth Amendment at least as early as 1985"); *Hansen v.*

14  *Black*, 885 F.2d 642, 645 (9th Cir. 1989) (reversing grant of summary judgment to officers

15  who injured arrestee's wrist and arm as they handcuffed her).

16         Defendants paint a picture that differs substantially from Plaintiffs' factual

17  allegations.   However, reports from eye witnesses and, in some instances, the officers

18  themselves, contradict Defendants' version of the events.   According to eye witness Mr.

19  Vela, Mr. Ledesma was attacked by a group of deputies who used violence wherever

20  possible despite the availability of numerous alternatives.   These contradictions between

21  Plaintiffs' and Defendants' stories create triable issues of fact as to whether the amount of

22  force used on Mr. Ledesma was reasonable.  But even based on Defendants' own version of

23  the events there is a triable issue of material fact as to whether the force used by Defendants

24  was reasonable.   Accordingly, the Court should deny Defendants' motion for summary

25

26  [3] "Ben Meiselas: Well, you understand that the formation of thrombi, there is [sic] a number of medical
    studies that discuss the formation of thrombi, or lets just use the term blood clots, as caused by trauma events?
27  Dr. Eugene Carpenter, Jr., M.D.: Yes, it can be."
    Depo. of Dr. Eugene Carpenter, Jr., M.D., Pg. 45:15–19.
28

judgment as to Plaintiffs' § 1983 claims based on the violation of Mr. Ledesma's Fourth Amendment right to be free from excessive force.

**B.    There Are Triable Issues of Material Fact as to Plaintiffs' 1983 Claims Based on Violations of the 14th Amendment**

Defendants' motion should be denied as to Plaintiffs' 14th Amendment claims because there is a triable issue of material fact as to whether Defendants' abuse of power was enough to shock the conscience.

Spouses and children may assert Fourteenth Amendment substantive due process claims if official conduct deprives them of their liberty interest in the companionship and society of their spouse or parent. *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013); *Morales v. City of Delano*, 852 F. Supp. 2d 1253, 1273–74 (E.D. Cal. 2012). The Fourteenth Amendment's Due Process Clause creates a right to be free from "executive abuse of power . . . which shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "In determining whether excessive force shocks the conscience, the court must first ask whether the circumstances are such that actual deliberation by the officer is practical." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (internal quotations and alterations omitted).

If the officer in question was faced with a time frame where actual deliberation was practical, a plaintiff may establish a Fourteenth Amendment violation by showing that the officer "acted with deliberate indifference." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Otherwise, if the officer "faced an evolving set of circumstances that took place over a short time period necessitating 'fast action,'" a plaintiff must make a higher showing that the officer "acted with a purpose to harm" the plaintiff. *Id.* at 1139 (quoting *Lewis*, 523 U.S. at 853). The Ninth Circuit has also instructed courts that "[w]hen an officer creates the very emergency he then resorts to deadly force to resolve, he is not simply responding to a preexisting situation. His motives must then be assessed in light of the law enforcement objectives that can reasonably be found to have justified his actions." *Id.* at 1141. "[T]he

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

overarching test under either is whether the officer's conduct 'shocks the conscience.'" *Id.* at 1139.

Defendants argue that the "intent to harm" standard is appropriate in this case. However, the intent to harm standard is inappropriate because each and every defendant had the opportunity to deliberate. First, Deputy Martin was not initially faced with an "evolving set of circumstances." Instead, Deputy Martin was faced with a man who was simply walking away from him. Mr. Ledesma was not fleeing, and Deputy Martin had no reason to believe that he posed a danger to those around him. These circumstances afforded Deputy Martin time to deliberate on what, if anything, to do to secure Mr. Ledesma's compliance. The same can be said for each and every other officer. When Deputies De La Garza and Perkins arrived on the scene, Mr. Ledesma was sitting on his buttocks on the pavement. Mr. Ledesma was not being assaultive, and he was not resisting arrest. Shortly thereafter, Officer Melton and Deputy Wong arrived on the scene. All four of these later-arriving officers had the opportunity to deliberate on their actions because the circumstances were such that neither the officers nor anyone else was in danger.

Defendants' actions displayed, at the very least, deliberate indifference to Mr. Ledesma's wellbeing. As Plaintiffs have described in detail, Defendants actions in attacking Mr. Ledesma for simply walking away from Deputy Martin were reprehensible. Defendants took a nonviolent situation and answered it with baton strikes, kicks, and dog bites. It is undisputed that Mr. Ledesma never actually hit Defendants, regardless of what movements he may have been making as he lay on the ground in a defensive posture. And instead of taking the time to deliberate or using nonlethal methods Defendants chose to beat Mr. Ledesma until they were satisfied.

This is especially clear as to Deputy Martin and Deputy Perkins, who unnecessarily escalated the situation with severe force when they could have taken time to deliberate. Deputy Martin approached Mr. Ledesma and escalated an otherwise nonviolent interaction when he began hitting Mr. Ledesma with a baton. That attack led directly to what followed,

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

including Mr. Ledesma lying on his back in a defense position while other officers hit him with batons and kicked him. Deputy Perkins also needlessly escalated the situation by commanding his K-9 to attack Mr. Ledesma despite the fact that he was sitting on his buttocks on the pavement. Such circumstances are exactly what the Ninth Circuit was referring to when it admonished courts to carefully consider cases where "an officer creates the very emergency he then resorts to deadly force to resolve." *Garlick v. Cty. of Kern*, No. 113CV01051LJOJLT, 2016 WL 880785, at *38 (E.D. Cal. Mar. 8, 2016) (citing *Porter*, 546 F.3d at 1141) (holding that there was a triable issue as to whether the defendant officer's conduct was shocking to the conscience in light of the fact that he provoked the situation that resulted in the use of deadly force).

Defendants do not argue that their actions are protected by qualified immunity. However, if Defendants did make such an argument it would fail because it is well established that "[p]arents have a Fourteenth Amendment right to the companionship of a child, which a police officer violates by "act[ing] with a purpose to harm" the child "that [is] unrelated to legitimate law enforcement objectives." *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1168–69 (9th Cir. 2013). Defendants fatally beat Mr. Ledesma using excessive force for simply walking away from Deputy Martin when he asked to speak to him. It is well established that such actions violate Plaintiffs' Fourteenth Amendment rights to companionship with their family member and accordingly, Defendants are not protected by qualified immunity.

## C. There are Triable Issues of Material Fact as to Whether Defendant Kern County Has a Policy of Encouraging Excessive Force by its Deputies

There is a triable issue of material fact as to whether Defendant Kern County has a policy of encouraging covering up excessive force by its deputies.

Under the *Monell* doctrine, Plaintiffs can recover from Kern County if Mr. Ledesma's injury was inflicted pursuant to a county policy, regulation, or custom. *See Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 690–91 (1978). City policy "need only cause [the] constitutional violation; it need not be unconstitutional per se." *Jackson v. Gates*, 975

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

F.2d 648, 654 (9th Cir. 1992); *see also Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 122 (1992). City policy "causes" an injury where it is "the moving force" behind the constitutional violation, *Monell*, 436 U.S. at 694, or where "the city itself is the wrongdoer." *Collins*, 503 U.S. at 122.

Plaintiffs allege that Defendant Kern County has a policy of denying citizen excessive force claims regardless of their veracity. In so doing Plaintiffs allege that the County has encouraged excessive force within the Kern County Sheriff's Department. From the date of Mr. Ledesma's arrest to the date of his death the Kern County Sheriff's Department displayed a shocking refusal to contend honestly with Defendants' actions. First, the force used by Defendants during the incident was so blatantly excessive and involved so many officers that it supports Plaintiffs' allegation that a custom of using excessive force exists at the Sheriff's Department. Second, Deputy Perkins himself claims that Kern County Sheriff's Department policy condones dog bites when a suspect is "resisting arrest." Perkins Depo. at Pg. 56:1–6. Third, the Kern County Sheriff's Department did not alert Mr. Ledesma's family of his injuries until August 26, 2016, seven days after he was arrested and hospitalized. And fourth, when Plaintiffs finally were alerted to Mr. Ledesma's life threatening injuries they were simply told that he had a stroke. The Sheriff's Department also prohibited hospital staff from discussing the source of Mr. Ledesma's injuries with his family.

Read in the light most favorable to Plaintiffs, the foregoing creates a triable issue of material fact as to whether Kern County has a policy or custom of encouraging excessive force by refusing to fairly address citizen complaints. Mr. Ledesma was fatally beaten by not one or two, but four members of the Kern County Sheriff's Department for ignoring a deputy. And as of today, each and every deputy claims their actions were in conformance with Department policy. In the days following Mr. Ledesma's death, the Department did everything it could to conceal what had happened from his family. The foregoing actions by the Department are evidence of the fact that it has a custom of doing everything it can to

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

conceal instances of excessive force when they happen. That policy resulted in Mr. Ledesma's death because it tacitly endorsed the force Defendants used against him. Accordingly, the Court should deny Defendants' motion as to Plaintiffs' Monell claims because there is a triable issue of material fact as to whether the Department had a policy or custom of covering up instances of excessive force.

### D. Defendants Have Not Met Their Burden of Establishing That There Is No Triable Issue of Material Fact as to Plaintiffs' Battery Claim

In California, a battery claim is the state counterpart of a federal claim for excessive use of force. Both battery and excessive force claims are analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution. *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 517 (2009). Due to these similarities, California courts have held that "federal cases are instructive in this area." *Id.* at 527; *Hayes v. County of San Diego*, 736 F.3d 1223, 1232 (9th Cir. 2013).

California Penal Code § 242 defines battery as any willful and unlawful use of force or violence upon the person of another. However, peace officers possess the privilege to use reasonable force to effect an arrest, to prevent escape, or to overcome resistance. Pen. Code, §§ 835, 835a. This privilege is far from unlimited, and police officers are never privileged to utilize excessive force. *Scurggs v. Haynes*, 252 Cal. App. 2d 256, 264 (1st Dist. 1967). Therefore, when a plaintiff asserts a battery claim against a police officer, he must prove "unreasonable force" as an element of the tort. *Edson 18 v. City of Anaheim*, 63, Cal. App. 4th 1269, 1272 (1998). When determining if force used in a particular situation was reasonable, "the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment' interests against the countervailing governmental interests at state." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

An evaluation of a Fourth Amendment claim for excessive or unreasonable force centers arounds three distinct steps. First, a court must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the "quantum of force" used against the individual. *Smith v. City of Hemet*, 394 F. 3d 689, 701 (9th Cir. 2005) (finding that the

- 19 -

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

use of a police canine on an individual who resisted arrest presented a genuine issue of material fact as to whether force used in an arrest was reasonable thereby defeating motion for summary judgment). Second, a court must then evaluate the government's interest in the use of force. *Graham*, 490 U.S. at 396. Finally, the gravity of the intrusion on the individual must be balanced against the government's need for that intrusion. *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003).

In the present case, the only element that remains in contention for Plaintiff's battery claim is whether Defendants' use of force was reasonable. When, as above, evaluating Defendants' use of force against plaintiff, it is clear that a triable issue of fact exists. This is evident when evaluating the "quantum of force" Defendants applied to Plaintiff. *Smith v. City of Hemet*, 394 F. 3d 689, 701 (9th Cir. 2005) (finding that the use of a police canine on an individual who resisted arrest presented a genuine issue of material fact as to whether force used in an arrest was reasonable thereby defeating a motion for summary judgment). Throughout the incident, Decedent Ledesma was subjected to a relentless torrent of baton strikes, force holds, kicks, and dog bites. This use of force was carried out by five officers and a canine unit against a single man who raised his hand when confronted by an officer. Upon reviewing the facts, two expert witnesses have arrived at the conclusion that Defendants' use of force was excessive. Moreover, Defendants concede that but for the canine bites Plaintiff received, Plaintiff would not have passed away.

As stated above, the evidence Defendants produced is based primarily on the self-serving testimony of party officers claiming that they refrained from committing harm thereby requiring deference to be granted to any split-second decisions these officers had to make. However, the notion that police are *required* to make split-second decisions is false. *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001) (rejecting officer's claim that split-second decision making was required where an officer shot an unarmed man who was walking towards him slowly). It is Defendants' failure to handle the incident properly in its earlier stages that led to any split-second decisions involving the use of force that Defendants

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1   now seek deference.  Defendants' testimony does not establish affirmative evidence that

2   Plaintiffs cannot prove their claims, but merely suffice as denials and faulty justifications,

3   making them insufficient to carry the burden on summary judgment.

4       **E.    Defendants Have Not Met Their Burden of Establishing That There Is No**
            **Triable Issue of Material Fact as to Plaintiffs' Negligence Claim**

5

6       Under Government Code section 820(a), public employees including police officers

7   may be held liable to the same extent as private persons under general tort principles.  *Lugtu*

8   *v. California Highway Patrol*, 26 Cal.4th 703, 715-715 (2001).  To prevail on a negligence

9   claim, a plaintiff must establish the existence of a legal duty of care, a breach of that duty,

10  and that defendant's breach of that duty is the proximate cause of plaintiff's resulting injury.

11  *Nally v. Grace Community Church*, 47 Cal.3d 278, 292 (1988).  Under these principles,

12  police officers can be found negligent in their decision to utilize deadly force, for tactics used

13  prior to the utilization of deadly force, and the manner in which a suspect is apprehended.

14  *Munoz v. Olin*, 24 Cal.3d 629, 636-637 (1979); *Grudt v. City of Los Angeles*, 2 Cal. 3d 575,

15  587 (1970).  In a wrongful death claim surrounding the alleged negligence of a police

16  officer, a plaintiff must show that the officers' actions were objectively unreasonable under a

17  Fourth Amendment analysis. *Graham, supra*, 490 U.S. at 397.  This requires a consideration

18  of the "totality of the circumstances" to determine whether the use of deadly force was

19  unreasonable.  *Hayes v. County of San Diego*, 57 Cal. 4th 622, 639 (2013).

20      In their motion for summary judgment as to Plaintiffs' negligence claim, Defendants

21  assert that the officers involved in the incident conducted themselves in a reasonable manner.

22  However, as stated above, Defendants have failed to establish that the level of force used

23  against Decedent Ledesma was in fact reasonable. Plaintiffs, through the use of expert

24  witness and other forms of evidence, have sufficiently demonstrated that a material issue of

25  fact exists as to Plaintiffs' claim of unreasonable force.  Due to the fact that Defendants have

26  failed to demonstrate that no issue as to any material fact exists, Defendants are not entitled

27  to summary judgment.

28

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR
ALTERNATIVELY SUMMARY ADJUDICATION OF ISSUES

**F. Defendants Have Not Met Their Burden of Establishing That There Is No Triable Issue of Material Fact as to Plaintiffs' Negligent Hiring, Training, and Retention Claims**

Government Code Section 815 provides that public entity tort liability rests exclusively statutory provisions. Section 815.2, which Defendants' motion for summary judgment seemingly ignores, provides "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Gov. Code § 815.2(a). Using the language of 815.2, the California Supreme Court in *C.A. v. Williams S. Hart Union High School Dist.* held that a claim against a public entity for negligent hiring, training, and supervision is legally tenable. *C.A. v. Williams S. Hart Union High School Dist.* 53 Cal. 4th 861 (2012). Although the Court in *Williams S. Hart Union High School Dist.* premised its holding on the existence of a "special relationship" that exists between pupils and a school district, the relationship between police officers and the general public is analogous. This is because "[p]olice officers occupy a unique position of trust in our society. They are responsible for enforcing the law and protecting society from criminal acts." *Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 206 (1991). "When law enforcement officers abuse their authority by committing crimes against members of the community, they violate the public trust . . . [which] may seriously damage the relationship between the community and its sworn protectors." *Id*. at 207. Due to this special relationship that police officers hold with the general public, Plaintiffs' claims for negligent hiring, training and retentions are legally tenable under *C.A. v. Williams S. Hart Union High School Dist*.

Furthermore, Plaintiffs' complaint does not suffer the same deficiencies as those found in *Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (2004). In *Munoz*, the plaintiff's theory of vicarious liability was built upon the argument that "state public entities always act through individuals." *Id.* At 1113. Different from the theory rejected in *Munoz*, Plaintiffs' theory of liability "does not depend on blurring the line between direct and

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

vicarious liability or on an assumption that a public entity's negligence liability is inherently vicarious." *C.A. v. Williams S. Hart Union High School Dist.* 53 Cal. 4th 861, 875 (2012). Rather, Plaintiffs allege that Defendants were aware of the unfitness of the Defendant Officers and nonetheless continued to employ and utilize these officers. Accordingly, since Defendants' direct tort liability for the negligent hiring, supervision, and retention of Defendant officers is an actionable claim under state law, and a question of triable fact remains as to whether Defendants were negligent in these activities, Defendants' motion for summary judgment should be denied.

G. **Defendants Have Not Met Their Burden of Establishing That There Is No Triable Issue of Material Fact as to Plaintiffs' State Civil Rights Claims**

a. **Defendants Have Not Met Their Burden of Establishing That There Is No Triable Issue of Material Fact as to Plaintiffs' Claimed Violation of the Unruh and Ralph Acts, §§ 51, 51.7 Claims**

The California Tort Claims Act requires that any civil complaint for money or damages against governmental entities first be presented to, and then rejected by the pertinent public entity. *Castaneda v. Department of Corrections and Rehabilitation*, 212 Cal. App. 4th 1051, 1060 (2013). On February 8, 2014, Plaintiffs properly submitted claims to the county of Kern pursuant to Government Code § 900, et seq. Included in these claims were alleged violations Civil Code § 51.7, the Ralph Act which incorporates Civil Code § 51, the Unruh Act.

California Code section 51.7 in pertinent provides "[a]ll persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51." Section 51(b) lists or defines these characteristics as including "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status."

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

Plaintiffs assert that Decedent Ledesma was subject to violence in the form of Defendant Officers' actions due to his Hispanic heritage. It is reasonable to infer, based on Kern County Sheriff's Department's prior use of force against Hispanic males, that Defendant Officers operated upon an inherent individual bias against Hispanics. This repeated pattern of violence perpetrated against Hispanic males from a predominately white group of officers presents, at the very least, a triable issue of fact as to a racial animus.

### b. Defendants Have Not Met Their Burden of Establishing That There Is No Triable Issue of Material Fact as to Plaintiffs' Claimed Violation of Bane Act, §52.1

Plaintiffs' Bane Act allegations should not be dismissed on summary judgment for minor procedural defects found in Plaintiffs' Tort Claims Act claims. Technical defects in the content of a claim, such as Plaintiffs' failure to expressly reference the Bane Act will not invalidate a claim so long as it "substantially complies" with the statutory requirements. *Johnson v. San Diego Unified School Dist.*, 217 Cal.App.3d 692, 697 (1990). The substantial compliance threshold is met when sufficient information is disclosed "to enable a public entity to investigate and evaluate the claim to determine whether settlement is appropriate." *Phillips v. Desert Hosp. Dist.*, 49 Cal. 3d 699, 706 (1989); *People v. Turner*, 34 Cal. 4th 406, 411 (2004). Upon examining the drafting requirements of a Government Code § 900 et seq. claim, it is clear that Plaintiffs' Claims satisfy the substantial compliance rule.

A Government Code § 900 et seq. claim is only required to provide a *general description* of the circumstances of plaintiff's injury and the damages incurred so that the entity will have sufficient facts to investigate and, if appropriate, settle. *Stocket v. Association of Calif. Water Agencies Jt. Powers Ins. Auth.*, 34 Cal. 4th at 446-447; *Connelly v. County of Fresno*, Cal. App. 4th 29, 38–42. Thus, substantial compliance exists so long as the cause of action pleaded alleges a factual basis for recover that is "fairly reflected" in the later written claim. *Castaneda v. Department of Corrections & Rehab.*, 212 CA4th 1051, 1062 (2013); *Dixon v. City of Livermore*, 127 CA4th 32, 39–42 (2005). So long as an

- 24 -

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

additional cause of action does not change the *fundamental facts* of the claim, but rather demonstrates the public entity's responsibility, these causes of action will be found to be in substantial compliance. *White v. Super. Ct. (City & County of San Francisco*, 225 CA3d 1505, 1511 (1990) (Plaintiff who submitted a claim for injuries arising from a police officer's unjustified arrest and battery could plead additional causes of action for negligent hiring, training and retention and for intentional failure to train, supervise and discipline).

Plaintiffs Government §900 et seq. claims established a sufficient factual record to provide Defendants with a general description of the circumstances surrounding Plaintiffs' injury. These claims outlined the nature of the dispute as well as the facts surrounding the incident that resulted in the death of Ronnie Ledesma. evidence. The addition of Plaintiffs' cause of action for a violation of the Bane Act does not change the fundamental facts of Plaintiffs' claims, but rather is a natural outgrowth of them. When considering the facts surrounding the incident and Plaintiffs' initial claim for violation of the Unruh and Ralph Acts, Defendants could foresee liability based on a violation of the Bane Act. Due to the fact that Plaintiffs' Bane Act claims are in substantial compliance with the statutory record and present a triable issue of material fact, dismissal on summary judgment is inappropriate.

Defendants further contend that Plaintiffs' claim under the Bane Act should be dismissed for a lack of standing. However, Defendants improperly classify Plaintiffs' claim under the Bane Act as the derivative of a wrongful death claim. The Bane Act provides a personal cause of action for victims of a hate crime. *Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal. App. 4th 141, 144 (1995). The act itself provides that an individual may bring a cause of action "in his or her own name and on his or her own behalf" against a party that "interferes by threats, intimidation or coercion, with the exercise or enjoyment" of any constitutional or statutory right. *Id.* (quoting Cal. Civ. Code § 52.1). In their motion for summary judgment, Defendants misinterpret the ruling of *Bay Area Rapid Transit Dist. v. Superior Court* as requiring a complete ban on all derivative suits falling under the Bane Act. However, *Bay Area Rapid Transit Dist.*'s holding can be limited to a parent's constitutional

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1   right to parent based upon a wrongful death theory.  Nowhere in the opinion did the court

2   discuss the survival of a cause of action nor California Code of Civil Procedure §§377.20 or

3   377.30.

4       Plaintiffs' claim under the Bane Act is not derived from a wrongful death claim but

5   rather is the derivative of a survival claim.  Under California law, unlike a wrongful death

6   claim, a survival claim is not a new cause of action that vests in heirs on the death of the

7   decedent, but rather is a separate and distinct cause of action belonging to the decedent

8   before death. *Medrano v. Kern Sheriff's Officer* 921 F.Supp.2d 1009, 1016 (E.D. Cal. 2013)

9   (allowing the brothers of a victim who was shot and killed by police officers to bring a claim

10  under the Bane Act against defendant county).  Due to the fact that Plaintiffs include children

11  of the deceased, Plaintiffs possess standing to bring their claim under the Bane Act on the

12  basis of survivorship.

13      Finally, Plaintiffs' claim under the Bane Act should not be dismissed because a triable

14  issue of material fact exists as to whether a violation occurred.  The Bane Act provides relief

15  to persons whose exercise or enjoyment of state or federal constitutional or statutory rights

16  have been interfered with by threats, intimidation or coercion.  Cal. Civ. Code § 52.1.  In

17  other words, the Bane Act requires "an attempted or contemplated act of interference with a

18  legal right accompanied by a form of coercion." *Jones v. Kmart Corp.* 17 Cal. 4th 329, 334

19  (1998).  Application of Section 52.1 is not limited to hate crimes and does not "require

20  plaintiffs to demonstrate that [a] County or its officers had a discriminatory purpose in

21  harassing them, that is, that they committed an actual hate crime." *Venegas v. County of Los*

22  *Angeles*, 32 Cal.4th 820, 843 (2004).  Rather, claims falling under Civil Code section 52.1

23  must be read in conjunction with Section 51.7. *Boccato v. City of Hermosa Beach*, 29 Cal.

24  App. 4th 1797, 1809 (1994).

25      Even in the absence of any excessive force, "[u]se of law enforcement authority to

26  effectuate a stop, detention (including use of handcuffs), and search can constitute" a threat,

27  intimidation or coercion. *Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dept.*,

28

387 F.Supp. 2d 1084, 1103 (N.D. Cal. 2005); *see also O'Toole v. Superior Court*, 140 Cal. App. 4th 488, 502 (4th Dist. 2006) (assuming without deciding that police officers' conduct in demanding protesters leave a college campus and then arresting one of them after they refused to discontinue constituted "coercion" for the purposes of Civ. Code § 52.1).

In the present case, the constitutional rights interfered with included Decedent Ledesma's right to be free from unreasonable search and seizure under the Fourth Amendment. As stated above, Decedent Ledesma belongs in the protected class of race found in Civ. Code § 51(b). Plaintiffs have introduced ample evidence demonstrating that there were multiple violations of Decedent Ledesma's Fourth Amendment rights in the form of excessive force. Furthermore, the manner in which Ledesma was approached by Defendant Martin and subsequently by the rest of Defendant Officers presents an issue of material fact as to whether Defendant Officers' actions constituted threats, intimidation or coercion. Due to the fact that multiple issues of material fact exist as to Defendants' use of force and whether their acts constituted coercion, intimidation or threats, summary judgment should not be granted as to Plaintiffs' claims under the Bane Act.

## V.    CONCLUSION

In accordance with the foregoing Plaintiffs request that the Court deny Defendants' motion for summary judgment.

DATED:  August 23, 2016                           GERAGOS & GERAGOS, APC


                                              By:__/s/ Ben Meiselas_____
                                                 MARK J. GERAGOS
                                                 BEN J. MEISELAS
                                                 Attorney for Plaintiffs
                                                 ADRIANA LEDESMA, JESSICA
                                                 LEDESMA, MARISSA LEDESMA,
                                                 RONNIE MATHEW LEDESMA, and
                                                 CHRISTINA HERRERA

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411